UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------x
CYNTHIA A. NUZZO,

                    **MEMORANDUM AND ORDER**

         Plaintiff,               12-CV-2373 (FB)

    -against-

CAROLYN W. COLVIN,
 Acting Commissioner of Social Security,

              Defendant.
---------------------------------------------------------------x

*Appearances:*  
*For the Plaintiff:*  
CHARLES E. BINDER, ESQ.  
Law Offices of Harry J. Binder and  
Charles E. Binder, P.C.  
60 East 42nd Street, Suite 520  
New York, NY 10165  

*For the Defendant:*  
LORETTA E. LYNCH, ESQ.  
United States Attorney  
CANDACE SCOTT APPLETON, ESQ.  
Assistant United States Attorney  
Eastern District of New York  
271 Cadman Plaza East  
Brooklyn, NY 11201  

**BLOCK, Senior District Judge:**

        Plaintiff Cynthia Nuzzo seeks review of the final decision of the Commissioner of Social Security ("Commissioner") denying her application for benefits under the Social Security Act.[1] Nuzzo moves for judgment on the pleadings, seeking a remand solely for the calculation of benefits. The Commissioner cross-moves for remand for further administrative proceedings. For the reasons set forth below, the case is remanded for further proceedings.

                                           **I.**

        On October 23, 2008, Nuzzo applied for disability and disability insurance benefits primarily due to severe back pain. After the Social Security Administration denied

---

[1]On February 14, 2013, Carolyn W. Colvin became the Acting Social Security Commissioner. The Clerk of the Court is directed to substitute Colvin as the named defendant pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure.

her application, she requested a hearing before an Administrative Law Judge ("ALJ").

On September 30, 2010, the ALJ concluded that Nuzzo was not disabled. Applying the familiar five-step process, the ALJ found that: (1) Nuzzo had not engaged in substantial gainful activity since May 5, 2006, the alleged onset date; (2) her lumbar degenerative disc disease and obesity qualified as severe impairments[2]; (3) her impairments did not meet the criteria listed in 20 CFR Part 404, Subpart P, Appendix 1; and (4) she "is capable of performing past relevant work as a receptionist," AR at 514.[3] This final conclusion was based on the ALJ's finding that Nuzzo has the residual functional capacity ("RFC") to "perform a range of sedentary work with usual breaks: she can lift or carry a maximum of ten pounds occasionally, sit for a total [of] six hours out of an eight-hour day, and stand for two hours out of an eight-hour day," although she "needs an option to sit or stand because she can sit for only one half to one hour at a time, stand for one half to one hour at a time, and walk only one block without stopping," and she "should also avoid pushing, pulling, kneeling, bending, stooping, and temperature extremes." AR at 508.

The Appeals Council denied Nuzzo's request for review, rendering the Commissioner's decision to deny benefits final. Nuzzo timely sought judicial review.

**II.**

"In reviewing the final decision of the Commissioner, a district court must

---

[2]The ALJ further found that Nuzzo's alleged right knee buckling, sleep apnea, right elbow pain, and depression lacked evidentiary support.

[3]Because the ALJ found Nuzzo capable of performing past work, there was no need to analyze under step five whether any other jobs existed that she could perform.

2

determine whether the correct legal standards were applied and whether substantial evidence supports the decision." *Butts v. Barnhart*, 388 F.3d 377, 384 (2d Cir. 2004). "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Halloran v. Barnhart*, 362 F.3d 28, 31 (2d Cir. 2004) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). Nuzzo argues that the ALJ erred by (1) improperly evaluating the medical evidence, (2) improperly assessing her credibility, and (3) relying on flawed testimony from the vocational expert ("VE"). The Commissioner asserts that the ALJ's decision contains errors that require remand for further proceedings, and the Court agrees.

**A.     The Treating Physician Rule**

Under the treating physician rule, "the opinion of a claimant's treating physician as to the nature or severity of the impairment is given 'controlling weight' so long as it 'is well-supported by medically acceptable clinical and laboratory or diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record.'" *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008) (quoting 20 C.F.R. § 404.1527(d)(2)). If an ALJ refuses to give controlling weight, he must consider certain factors in deciding how much weight to give, including "(I) the frequency of examination and the length, nature and extent of the treatment relationship; (ii) the evidence in support of the treating physician's opinion; (iii) the consistency of the opinion with the record as a whole; (iv) whether the opinion is from a specialist; and (v) other factors brought to the Social Security Administration's attention that tend to support or contradict the opinion." *Halloran*, 362 F.3d at 32; *see also* 20 C.F.R. § 404.1527(d)(2). "Failure to provide 'good reasons' for not crediting the opinion of a claimant's

3

treating physician is a ground for remand." *Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir. 1999).

Three treating physicians, as well as a consultative examiner, opined that Nuzzo had significant functional limitations. The ALJ afforded little weight to these opinions, finding them conflicting, ambiguous, incomplete, or unsupported.

Dr. Ji Han, an anesthesiologist and pain management specialist, treated Nuzzo on a monthly basis from May 2008 through April 2010. He noted decreased range of motion, tenderness, and positive straight leg-raising. He observed her gait as sometimes steady, other times antalgic (limping). The ALJ gave significant weight to Dr. Han's opinion that Nuzzo could occasionally lift or carry up to 10 pounds but could not push, pull, kneel, bend, or stoop. The ALJ gave little weight, however, to Dr. Han's opinion that Nuzzo could only sit, stand, and walk for up to 1 hour in an 8-hour day on the grounds that this was inconsistent with Nuzzo's daily activities, that his notes indicated the ability to heel-toe walk and ambulate independently, and that certain findings were absent, such as specific degrees on the straight leg-raising tests. The ALJ also found the ability to sit, stand, or walk for 1 hour inconsistent with her lifting and carrying ability, and the need to take hourly breaks from sitting inconsistent with the limitation that Nuzzo sit for just 1 hour per day. The ALJ rejected Dr. Han's opinions on absences and unscheduled breaks as "totally speculative," AR at 512, and found no evidence to support his diagnosis of cervical radiculopathy and neck restrictions.

The ALJ erred by rejecting Dr. Han's opinion as inconsistent and incomplete "without first attempting to fill any clear gaps in the administrative record," *Rosa v. Callahan*, 168 F.3d 72, 79 (2d Cir. 1999), and by "substitut[ing] his own expertise or view of the medical proof for the treating physician's opinion," *Shaw v. Chater*, 221 F.3d 126, 134–35 (2d Cir. 2000).

4

The ALJ has "an affirmative obligation to develop the administrative record," *Melville v. Apfel*, 198 F.3d 45, 51 (2d Cir. 1999), including the duty to "seek additional evidence or clarification from your medical source when the report from your medical source contains a conflict or ambiguity that must be resolved, the report does not contain all the necessary information, or does not appear to be based on medically acceptable clinical and laboratory diagnostic techniques," 20 C.F.R. § 404.1512(e)(1).[4] Moreover, "lack of clinical findings" does not constitute a "good reason" for discrediting an opinion since "even if the clinical findings were inadequate, it was the ALJ's duty to seek additional information from [the medical source] *sua sponte*." *Schaal v. Apfel*, 134 F.3d 496, 505 (2d Cir. 1998). Instead of rejecting the opinion of a specialist who treated Nuzzo more than 20 times, the ALJ should have sought clarification.

Further, although the ALJ found no evidence of a herniated disc, *see* AR at 513, the record contains an MRI that shows a central disc herniation, *see* AR at 304. It was therefore improper to discount Dr. Han's opinion based on this mistaken belief.

Dr. Timothy Robinson, Nuzzo's primary care physician, treated her approximately 20 times between 2006 and 2009. His notes indicate that Nuzzo was taking

---

[4]Although new regulations took effect on March 26, 2012, the version in effect when the ALJ adjudicated the claim applies to this Court's review. *See Lowry v. Astrue*, 474 F. App'x 801, 805 n.2 (2d Cir. 2012). The new regulations relieve the ALJ of the duty to re-contact the source as the first step, *see* 20 C.F.R. § 404.1512 (2012), and instead allow the ALJ to "determine the best way to resolve the inconsistency or insufficiency" based on the facts of the case, 20 C.F.R. § 404.1520b (2012). The ALJ must take at least one of the following steps: (1) re-contact the treating physician or other medical source, (2) request additional existing records, (3) request a consultative examination, or (4) ask the claimant or others for more information. *Id.* § 404.1520b(c)(1)-(4). Notably, the new regulations "do not alter an adjudicator's obligations," and the agency "expect[s] that adjudicators will often contact a person's medical source(s) first." *How We Collect and Consider Evidence of Disability*, 77 Fed. Reg. 10,651, 10,652 (Feb. 23, 2012).

5

steroid shots and medication for pain and anxiety. He also noted swelling and a positive straight leg-raising test, once around 60 degrees and once around 30 degrees. Dr. Robinson opined that Nuzzo could sit, stand, or walk for a total of 2 to 3 hours in an 8-hour workday, must move around after 1 hour, can occasionally lift up to 5 pounds, has moderate manipulation restrictions, and should avoid pushing, pulling, kneeling, stooping, and extreme temperatures. The ALJ gave "significant weight" to his postural and environmental limitations; however, she gave "less weight" to the lifting, carrying, sitting, standing, and walking limitations as not consistent with other evidence, and "little weight" to the manipulation limitations as not supported by substantial evidence. AR at 513. The ALJ further criticized Dr. Robinson for not including range of motion exams, not indicating whether the leg-raising test was sitting or supine, labeling low back pain as a diagnosis rather than a symptom, and indicating that an MRI showed herniation without such support in the record.

The ALJ committed the same errors in rejecting Dr. Robinson's opinion, noting gaps without attempting to fill them and disregarding evidence of a herniation. The ALJ also dismissed aspects of the opinion as inconsistent with other evidence without identifying the contradictory evidence. This is particularly troubling given that the opinions of Dr. Han and Dr. Roa (a consultative examiner) substantially agreed with Dr. Robinson's assessment.

Dr. Jonathan Lewin, an orthopedic surgeon, examined Nuzzo twice in 2009 due to pain radiating from her back to her leg. He noted positive straight leg-raising, as well as tenderness and limited range of motion. He discussed surgery with Nuzzo given the ineffectiveness of conservative measures. The ALJ gave "little weight" to Dr. Lewin's conclusion that Nuzzo has "significant debility and disability," AR at 513, criticizing his

6

opinions as vague, inconsistent with other evidence, and lacking specific degrees and positions in the testing. As previously stated, these are improper reasons for discounting the opinion, and the ALJ should instead have sought further clarification from Dr. Lewin.

The ALJ also gave little weight to the opinion of Dr. Paul Roa, a physical medicine and rehabilitation specialist who examined Nuzzo at the agency's request. Dr. Roa noted antalgic gait, limited ranges of motion (in specific degrees), and an inability to complete straight leg-raising in the supine position. He found a cane to be medically necessary, and diagnosed chronic lower back pain and obesity. He opined that Nuzzo had "mild to moderate limitations" in her "ability to sit and stand for long periods of time, climb, walk long distances, push, pull, and carry heavy objects because of findings of restriction in the range of motion of the lumbosacral spine." AR at 446. Dr. Roa indicated on a form that Nuzzo could occasionally lift and carry up to 10 pounds; could frequently or continuously use her hands but could never push or pull; and could occasionally climb stairs, balance, stoop, kneel, crouch, and crawl. The ALJ gave significant weight to these opinions in light of their consistency with the opinions of Dr. Han and Dr. Robinson. Dr. Roa also opined on the form that Nuzzo could sit and stand for less than 30 minutes at a time; could walk for less than 10 minutes at a time; and could sit, stand, and walk for 1 hour in an 8-hour workday; however, the ALJ declined to give significant weight to these opinions, deeming them inconsistent with the "mild to moderate limitations" expressed in his examination. It was inappropriate to reject Dr. Roa's conclusions as internally inconsistent without giving him an opportunity to explain.

Finally, the ALJ stated that he gave "some weight" to other medical reports "to the extent the findings contained therein are consistent with [Nuzzo's] residual functional

7

capacity." AR at 514. The ALJ turned the RFC determination process on its head by relying on medical evidence that supported her pre-determined RFC and disregarding the rest. *See* 20 C.F.R. § 404.1545(a)(3) ("We will assess your residual functional capacity based on all of the relevant medical and other evidence."); *cf. Brindisi v. Barnhart*, 315 F.3d 783, 787-88 (7th Cir. 2003) (stating that an ALJ "turns the credibility determination process on its head by finding statements that support the ruling credible and rejecting those statements that do not, rather than evaluating [claimant's] credibility as an initial matter in order to come to a decision").

Accordingly, the ALJ's use of improper legal standards and failure to develop the record requires remand. *See Butts*, 388 F.3d at 385–86.

**B.     Evaluation of Subjective Complaints**

Nuzzo next contends that the ALJ improperly discredited her statements about her symptoms and limitations. To evaluate the credibility of a claimant's subjective complaints, the ALJ must first determine whether the claimant has a medically determinable impairment that could reasonably be expected to produce her symptoms, and second evaluate the intensity, persistence, and limiting effects of those symptoms. *See* 20 C.F.R. § 404.1529(b)-(c). The ALJ must provide "specific reasons for the finding on credibility, supported by the evidence in the case record." SSR 96–7. When a claimant's subjective complaints suggest a greater severity than can be shown by objective medical evidence, the ALJ must consider other relevant factors, including the claimant's daily activities, the frequency and intensity of the pain and other symptoms, the medications taken and their side effects, and other treatment administered to alleviate pain or other symptoms. *See* 20 C.F.R. § 404.1529(c)(3).

The ALJ found that Nuzzo's "medically determinable impairments could

8

reasonably be expected to cause some of the alleged symptoms; however, [her] statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment." AR at 509. The ALJ emphasized that Nuzzo's daily activities, which included cooking, dusting, and shopping, did not support her claimed inability to work. The ALJ also noted inconsistent reporting of side effects from medication. While these were proper considerations, the ALJ ignored other relevant factors, such as the injections and strong pain medication that Nuzzo received. Moreover, the ALJ failed to explain how Nuzzo's ability to perform limited daily activities indicates that she is able to work. The ALJ impermissibly substituted her own view of the evidence since several doctors found Nuzzo to suffer from severe functional limitations that would likely prevent her from working. *See Shaw*, 221 F.3d at 134–35.

Furthermore, because the ALJ improperly discounted the opinions of three treating physicians and a consultative examiner in determining Nuzzo's RFC, the ALJ must also reconsider her credibility. The ALJ found her complaints not credible to the extent they were inconsistent with the RFC determination. But once the ALJ reconsiders the medical evidence and obtains additional information as needed, it may fully support Nuzzo's complaints.

C. **Reliance on the Testimony of the Vocational Expert**

Finally, Nuzzo contends that the VE's testimony was flawed since it was based on a flawed RFC assessment. A VE's opinion is useful only when based on a claimant's actual capabilities. *Aubeuf v. Schweiker*, 649 F.2d 107, 114 (2d Cir. 1981). Here, the ALJ improperly rejected several medical opinions and instead concluded—without citing to evidence—that

9

Nuzzo could sit for 6 hours. Because the ALJ's errors make it impossible to determine Nuzzo's RFC, it is also not possible to determine whether the VE's opinion was proper.

An inconsistency between the VE's testimony and Social Security rulings ("SSR") also requires remand. The ALJ's RFC determination states that Nuzzo must avoid stooping. Though the VE testified that this would not affect her ability to perform her past work, SSR 85-15 states that some stooping "is required to do almost any kind of work," and SSR 96-9p notes that "[a] *complete* inability to stoop would significantly erode the unskilled sedentary occupational base and a finding that the individual is disabled would usually apply."

### III

Nuzzo argues for a remand for calculation of benefits based on the substantial evidence of disability, while the Commissioner argues for a remand for further proceedings since the record does not compel this conclusion. The Court may enter "a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). Remand for calculation of benefits is appropriate where "the record provides persuasive proof of disability and a remand for further evidentiary proceedings would serve no purpose." *Parker v. Harris*, 626 F.2d 225, 235 (2d Cir. 1980). "Where there are gaps in the administrative record or the ALJ has applied an improper legal standard," remand for further proceedings is proper. *Rosa*, 168 F.3d at 82–83.

As the Court cannot say that "application of the correct legal standard could lead to only one conclusion," further proceedings are appropriate. *Schaal*, 134 F.3d at 504. The ALJ erred by rejecting medical opinions due to ambiguities, omissions, and inconsistencies without first seeking to resolve these deficiencies. The ALJ's failure to seek clarification on crucial

10

issues, such as Nuzzo's range of motion and her ability to sit, renders the record incomplete and prevents this Court from determining her disability status. *See Curry v. Apfel*, 209 F.3d 117, 124 (2d Cir. 2000) ("Upon a finding that an administrative record is incomplete or that an ALJ has applied an improper legal standard, we generally vacate and instruct the district court to remand the matter to the Commissioner for further consideration."). The duties of reviewing the record, weighing conflicting evidence, and drawing conclusions as to Nuzzo's RFC fall to the ALJ in the first instance. *See* 20 C.F.R. § 404.1527(e)(2); *Schaal*, 134 F.3d at 504.

Because the ALJ found that Nuzzo could perform her past job, the ALJ did not determine whether she could perform any other work. Consequently, the record is largely undeveloped on this issue. "[A] remand for further proceedings is the appropriate remedy when an erroneous step four determination has precluded any analysis under step five." *Williams v. Apfel*, 204 F.3d 48, 50 (2d Cir. 1999). The record in this case is not "sufficiently complete or persuasive with respect to disability as to make a remand unnecessary." *Id.* Similarly, the VE did not express any opinion on a person's ability to work given the limitations found by Nuzzo's physicians and the examiner.[5] *Cf. Green-Younger v. Barnhart*, 335 F.3d 99, 109 (2d Cir. 2003) (remanding only for benefits calculation where the VE had admitted that a person with the limitations expressed by the treating physician could not perform any work). Thus, once the ALJ reassesses Nuzzo's RFC, additional VE testimony will likely be necessary to determine whether she is able to perform any work. Further clarification is also needed regarding Nuzzo's ability to stoop and whether that prevents her from working.

Upon remand, the Court cautions the ALJ against overemphasizing the absence

---

[5]Since Dr. Roa examined Nuzzo after the hearing, the VE did not have his report.

11

of specific clinical findings. Listing 1.00E of the C.F.R. Appendix states in relevant part:

> Examination of the spine should include a detailed description of gait, range of motion of the spine given quantitatively in degrees from the vertical position (zero degrees) or, for straight-leg raising from the sitting and supine position (zero degrees) . . . .

20 C.F.R. Part 404, Subpart P, App. 1, § 1.00E. The ALJ properly considered at step three whether the evidence met the requirements of Listing 1.00E, *see* 20 C.F.R. § 404.1520(a)(4)(iii), but she improperly relied on them in determining the RFC. Pursuant to the regulations:

> When you have a severe impairment(s), but your symptoms, signs, and laboratory findings do not meet or equal those of a listed impairment in appendix 1 of this subpart, we will consider the limiting effects of all your impairment(s), even those that are not severe, in determining your residual functional capacity. . . . In assessing the total limiting effects of your impairment(s) and any related symptoms, we will consider all of the medical and nonmedical evidence . . . .

20 C.F.R. § 404.1545(e); *see also id.* (using "low back disorder" as an example of an impairment that varies by individual in its limiting effects). Thus, the absence of specific degrees or positions from some of the clinical records is not dispositive of Nuzzo's RFC or disability status, particularly in light of the evidence of severe functional limitations.

**IV**

For the foregoing reasons, the Commissioner's motion for remand for further proceedings is granted, and Nuzzo's motion for remand solely for calculation of benefits is denied. On remand, the ALJ should reconsider the opinions of Dr. Han, Dr. Robinson, Dr. Lewin, and Dr. Roa, and should contact them to resolve any inconsistencies and ambiguities. After considering this evidence in light of the entire record and re-determining Nuzzo's RFC, the ALJ should reassess Nuzzo's subjective complaints and elicit new VE testimony if needed.

12

**SO ORDERED.**

                                                          /S/ Frederic Block
                                                        FREDERIC BLOCK
                                                        Senior United States District Judge

Brooklyn, New York
June 11, 2013